UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00140-RJC

| | |
|---|---|
| **CHRISTY ROPER,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**COMMISSIONER OF SOCIAL SECURITY,** )<br>)<br>**Defendant.** )<br>) | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment and the Commissioner's Brief. (Doc. Nos. 10, 13). Having fully considered the written arguments, administrative record, and applicable authority, Court finds that Defendant's decision to deny Plaintiff Social Security benefits is proper and, therefore, Defendant's decision is **AFFIRMED**.

I.  **BACKGROUND**

Plaintiff Christy Roper seeks judicial review of the Commissioner of Social Security's denial of her social security claims. Roper filed applications for supplemental security income and benefits on October 2, 2020, (Tr.[1] at 58), based on an alleged disability onset date of that same day. (*Id.* at 15). On January 22, 2021, the Social Security Administration denied Roper's initial claim and denied her claim again upon reconsideration in April 2021. (*Id.* at 84; Doc. No. 11). Roper then agreed to a telephone hearing with Administrative Law Judge ("ALJ") Charles Howard on

---

[1] Citations to "Tr." throughout the order refer to the administrative record located at Doc. No. 7.

1

October 6, 2021. (*Id.* at 34). After that hearing, the ALJ denied Roper's claim for benefits on November 3, 2021, and the Appeals Council later denied Roper's request for review. (*Id.* at 1, 12).

In denying Roper's social security claim, the ALJ conducted a five-step sequential evaluation. (*Id.* at 17-27). At step one, the ALJ found that Roper had not engaged in substantial gainful activity since the alleged onset date. (*Id*. at 17). At step two, the ALJ found that Roper suffered from osteoarthritis, lumbar/cervical spondylosis, edema/venous insufficiency, obesity, posttraumatic stress disorder, persistent depressive disorder, unspecified disruptive, impulse-control, and conduct disorder, and borderline intellectual functioning, all of which are severe impairments. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id*. at 18-19). Before moving to step four, the ALJ found that Roper had the following residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 416.967(b). Mentally, the claimant can understand and remember simple instructions; maintain concentration for simple tasks; adapt to routine change; and have no more than occasional interaction with the public, co-workers, and supervisors.

(*Id*. at 19). At step four, the ALJ found that Roper was unable to perform any past relevant work and found at step five that Roper could perform jobs that exist in significant numbers in the national economy. (*Id*. at 26-27).

After exhausting her administrative remedies, Roper brought this action for review of the Commissioner's decision denying her applications for disability benefits and supplemental security income. (Doc. No. 1). Roper moved for summary judgment and the Commissioner filed a brief as required under the recently updated Supplemental Rules to the Federal Rules of Civil Procedure, (Doc. Nos. 10, 13), and the issues are now ripe for review in this Court.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> More than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("[I]t is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that a reviewing court is not to reweigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. This is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Roper assigns error to the ALJ's evaluation of the medical evidence regarding her mental disorders, particularly his treatment of the medical opinions of Drs. Durr and Strawn, and his failure to explain the lack of an accommodation for her edema in the RFC. (Doc. No. 10). Roper's argument is without merit; the ALJ based his decisions on substantial evidence and properly explained those decisions by assessing Roper's credibility, relying on objective medical evidence, and comparing Roper's claimed limitations with her activities of daily living.

### A. Substantial Evidence Supports the ALJ's Decision to Discount the Opinions of Drs. Durr and Strawn

"The determination of eligibility for social security benefits involves a five-step inquiry." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). "The five step inquiry asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of [one of certain listed] impairments ...; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Id.* at 653 n.1; 20 C.F.R. § 404.1520. Before the fourth step, the ALJ determines the claimant's RFC, which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). "The ALJ must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "In doing so, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion," including a "discussion of which evidence the ALJ found credible and why, and specific application of

4

pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 188-89 (internal quotation marks and citations omitted).

This is Roper's fourth application for benefits denied by the Commissioner of Social Security, with a fifth awarded earlier then rescinded when Roper entered prison. (Tr. at 15). In denying this latest application, the ALJ found that the opinions of two doctors were uncontrolling because those opinions were "inconsistent with the totality of the evidence." (*Id.* at 25). Roper alleges that the ALJ "cherry-picked" evidence from the record and erred in discounting the opinions of Drs. Durr and Strawn, both of whom opined that Roper was suffering from multiple severe mental disorders. Roper is incorrect.

After an exploration of Drs. Durr and Strawn's opinions and the other medical information in the record, the ALJ properly explained his reasons for not giving the medical opinions of Drs. Durr and Strawn controlling weight and he based his decision on substantial evidence.

Dr. Strawn concluded on March 24, 2021 that Roper demonstrated a "substantial loss in the ability to understand, remember, or carry out simple instructions; respond appropriately to supervisors, coworkers, or normal work situations; or deal with changes in routine work settings," and that she was extremely limited in her ability to "to interact with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond to changes in the work setting, and travel to unfamiliar places or use public transportation." (*Id.* at 2760-64). Dr. Durr similarly concluded on September 10, 2021, that Roper suffered from PTSD, persistent depressive disorder, and borderline intellectual functioning, and that these mental disorders, which presented as hypervigilance, anxiety, anger, and fear, would prevent her from obtaining competitive

5

employment, and thus, Dr. Durr recommended continued intensive mental health treatment, coupled with supportive services including career coaching. (*Id.* at 2926).

Though the doctors' opinions are relevant evidence, the ALJ need not give controlling weight to the opinion of a treating physician, *see* 20 C.F.R. § 404.1520c, and "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence.").

In crafting the RFC and denying Roper's application, the ALJ considered Dr. Durr's evaluation, but ultimately decided that Dr. Durr's opinion was "inconsistent with the totality of the evidence," and accordingly gave the opinion substantially less weight. (Tr. at 25). Specifically, though Dr. Durr recommended Roper was incapable of engaging in gainful employment on a regular basis because of her mental disorders, the ALJ noted repeated instances in the record where Roper sought medical care and either presented with a euthymic mood or indicated to her provider that she was "doing fine." (*Id.* at 22, 26). Furthermore, the ALJ pointed to evidence in the record that suggested Roper made progress towards her mental health goals and that medication effectively managed her symptoms: "the claimant was able to reflect on her incarceration and positive behavioral changes she had made over time"; "she relayed that her Effexor prescription had been working"; "the claimant reported that the recent increase in lamotrigine 'was awesome…it calmed me down...made me a more happy go lucky person'"; and "[t]he claimant also reported that her other medication had improved her mood stability." (*Id.* at 21, 2020, 2552, 2734, 2824). The ALJ also noted that on March 12, 2021, Roper "was negative for evidence of depression, and … exhibited [a] euthymic mood and appropriate affect," (Tr. at 22, 2773), and two

weeks later, Roper herself reported she "was 'doing fine,' in general she was doing well, and her mental health was stable." (*Id.* at 22, 2853).

Moreover, the ALJ noted that, when Dr. Durr observed Roper and administered several mental tests, the "examiner later stated that it was quite possible that the claimant did not try her hardest on the [intelligence test], and the results of the Test of Memory Malingering (TOMM) suggested that she did not put forth maximum effort on this test either." (*Id.* at 23, 2924). The ALJ also observed that Roper "denied ever being terminated from a job due to personality conflicts," and that she prepares her own meals, performs household chores, and gets along with friends, family members, and neighbors. (Tr. at 19). These observations, coupled with other evidence in the record, constitute "substantial evidence" in conflict with Dr. Durr's opinion. *See Mastro*, 270 F.3d at 178. The fact that the ALJ considered evidence in the record and found certain evidence more persuasive is not "cherry-picking" evidence; instead, the ALJ outlined Roper's history of treatment, her symptoms, her activities of daily living, and other evidence in the record, and, noting evidence contradictory to the opinions of Drs. Durr and Strawn, came to his conclusion. The ALJ therefore relied on substantial evidence in discounting Dr. Durr's opinion.

The ALJ also properly explained the extent to which Dr. Strawn's opinion is inconsistent with the totality of the evidence. At approximately the same time that Roper told Dr. Strawn that she was "always angry" and constantly stressed, Roper tested negative for depressive tendencies on a questionnaire administered to her by another provider, (Tr. at 2772), and other treatment notes taken at around the same time indicated that Roper denied suffering from depression. (Tr. at 25, 2866). The ALJ also noted that, at the time Dr. Strawn provided her opinion, "claimant did not routinely complain of significant memory, comprehension, or concentration deficits, and although she appeared distractable, there is evidence that she was redirectable. Further, the record shows

7

that the claimant was making progress towards her treatment goals, and the claimant's reported activities of daily living are inconsistent with the marked limitations." (*Id.* at 25). Nearly two dozen of Roper's mental treatment notes, in fact, end with the phrase "positive progress toward goal." (Tr. at 2551, 2552, 2554, 2555, 2556, 2557, 2700, 2701, 2702, 2703, 2704, 2706, 2707, 2709, 2796, 2797, 2799, 2800, 2801, 2802, 2849, 2851). As he did with the opinion of Dr. Durr, the ALJ reviewed the medical reports produced by Dr. Strawn before concluding that Dr. Strawn's opinion was unsupported by the "totality" of the record, and the ALJ noted where Dr. Strawn's opinion conflicted with the record. The ALJ therefore relied on substantial evidence in making his finding that Roper's mental disorders did not prevent her from engaging in light work.

### B. The ALJ Properly Explained His Decision on Roper's Edema

Roper next argues that the ALJ failed to perform a function-by-function analysis of Roper's alleged need to elevate her leg due to edema. Unless a certain impairment is "irrelevant or uncontested," an ALJ must explain the rationale behind his decision not to make allowances for a certain impairment in the RFC, *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), by providing a "narrative discussion describing how the evidence supports each conclusion," including a "discussion of which evidence the ALJ found credible and why, and specific application of pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 188-89.

In crafting an RFC without explicit allowance for elevation of the legs, the ALJ first noted that Roper's statements "concerning the intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 24). He then noted that Roper reported no physical health issues until 2021 (after an alleged disability onset date in October 2020), but that after 2021, her providers noted "persistent, but mild, extremity swelling." (Tr. at 24). Still, the ALJ maintained, Roper's

"prescribed course of treatment has been largely routine and conservative in nature, and there is no indication that her impairments were of the severity to require frequent emergency room visits, injections, physical therapy, or surgical intervention." (*Id.*). Additionally, in reviewing Roper's alleged physical impairments, the ALJ recounted recommendations by Roper's doctor that she "keep her legs elevated" to address mild swelling, but he then noted Roper "exhibited normal movement of the extremities, with normal gait and stance." (*Id.* at 20). Later, in building a "narrative bridge" between his decision and the record, the ALJ referred again to this evidence: "claimant did not consistently exhibit notable range of motion limitations … [her] gait was described as slow, but not necessarily antalgic or unpredictable." (*Id.* at 24).

While evidence in the record does show that providers recommended that Roper elevate her legs, and while Roper herself stressed a need to elevate her legs, the ALJ found neither of these reasons justification enough to restrict Roper from light work, and he explained his decision. (*Id.* at 24 ("[L]imitation to light exertion work adequately accommodates the claimant's physical impairments," including "persistent, but mild, extremity swelling.")). At bottom, the ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. *Hays*, 907 F.2d at 1456. Consequently, the ALJ is accorded deference with respect to determinations of a claimant's credibility. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Id.*

In assessing Roper's credibility – and specifically considering her statements in light of her activities of daily living, her apparent lack of effort on her certain tests, her "routine and conservative" course of treatment, and other medical evidence in the record – the ALJ found that though Roper's impairments "could reasonably be expected to cause the alleged symptoms," her

statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 24); *see Williams v. Berryhill*, No. 3:17-CV-00467-RJC, 2018 WL 4705557, at *5 (W.D.N.C. Sept. 29, 2018) (Conrad, J.) (finding this same language about a claimant's credibility appropriate under *Mascio* where the ALJ chronicled Plaintiff's history of treatment and considered its implications). Therefore, the ALJ based his decision on substantial evidence, provided a satisfactory "narrative discussion" explaining his decision, and properly explained Roper's capacity to perform the relevant functions of light work.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **DENIED**; and
2. The Commissioner's decision to deny Roper Social Security benefits is **AFFIRMED.**

The Clerk is directed to close this case.

Signed: September 28, 2023

Robert J. Conrad, Jr.
United States District Judge